Good morning, Your Honors. May it please the Court, my name is Drew Sherman from the Adlai Law Group. I represent the appellate. I'm going to try and reserve five minutes for rebuttal. Your Honors, given the ruling on summary judgment, the main issue before this Court today is the ownership of four registered trademarks to a rock band from the 1980s that is still performing. Can I interject for a minute? Yes, Your Honor. Please. I'm still concerned with whether we have jurisdiction in this case. Maybe you could address that first, because if we don't have jurisdiction from a final order, then we can't really get to your client's contentions. So my question on that, I think probably I can get to the crux, is that if Croucier had asked for declaratory relief that it was entitled to, like a statement by the Court that it owned the trademarks, and the Court didn't rule on that, maybe there wasn't a motion on that. Maybe there was. But how is there a final order if that issue hasn't been resolved? Thank you, Your Honor. I'm glad that you asked that question, because I think both or all the parties believe that it was a final ruling. The case law that Your Honors asked us to The declaratory relief request is not one that needs to be ruled on, per se, by the trial court. Trial court can ignore, if it wants, or not rule on the request for declaratory relief, so long as it provides the relief requested, as it were, in some other form or fashion. And that's what has happened here, from which a final ruling can be taken, is that Mr. Croucier, though we dispute what he was asking for, but he did ask for a ruling that, a declaratory relief, that the trademarks were owned by the RAP partnership. Now, though Mr. Croucier's declaratory relief request was not specifically addressed by the trial court at the summary judgment ruling, the summary judgment ruling did provide, essentially, the relief that he was requesting. And the case law, I think, is clear that, so long as the relief is obtained some way But how did it provide the relief he was requesting, if he wanted to ask for the relief that he owned the trademarks? Well, he was asking that the RAP, well, I think, a little bit different, Your Honor. I think Mr. Croucier was asking that the partnership be declared to be the owner of the trademarks. Well, that's what I meant, really. And so But that wasn't done by the court, right? Well, as I understand it, the court denied summary judgment to your client on the theory that your client didn't have the trademarks, didn't have valid trademarks. But I didn't understand how the court addressed whether  I would dispute Your Honor's interpretation of the ruling by the trial court. I don't believe that the trial court actually stated or addressed, really, the plaintiff's motion at all. That's one of the issues that we have in regards to the trial court's application of the law to the summary judgment motions, is that they were cross-summary judgment motions and the law dictates that the trial court must look at each motion individually. Now, I don't think Is it your analysis that because the court basically said that WBS doesn't own the trademark and the assignment from RAP, is it called RAP? RAP, yes. The assignment from RAP wasn't valid and because the assignment wasn't valid, Croucier is still a member of the RAP partnership, so therefore, the RAP partnership still owns the trademark. Is that a fair characterization? Is that how you would characterize the district court's ruling? I think so, Your Honor. I would characterize the district court's ruling saying that Mr. Croucier, it is, Mr. Croucier was in the partnership and his expulsion was not proper. Though, the problem with that, and that's one of our issues, is that the trial court stated that the expulsion of Mr. Croucier from the partnership was not proper, but because that the other partners, which it had to be unanimous, it could not be, he said That gets to the merits. On the jurisdictional issue, the parties had submitted your supplemental briefs and both sides are in agreement that all issues that either party has asked for has been now definitively resolved. And so, the parties are in agreement that there doesn't need to be a remand for that declaratory judgment request to be answered. So, I was asking about what your analysis was in terms of concluding that there's nothing left to be resolved. Is it that the expulsion is invalid and so, therefore, the default owner is still RAP? Yes, Your Honor, that would be the case. That the summary judgment ruling did address Mr. Croucier's request for declaratory relief, as you stated, in a kind of roundabout way. And because of that, there was a final judgment to be taken to the appellate level. So, I would agree with you on that issue as well, Your Honor. And Judge Gould, did I address your question? I think you did, yes. Thank you, Your Honor. So, your position then, just so that I'm clear, is that the district court found affirmatively that Mr. Croucier was the trademark rightful owner? The partnership is, I think the district court said that the partnership was the rightful owner. Including Mr. Croucier? Correct, Your Honor, because the district court stated that his expulsion in 1997, I believe, was not valid. But the problem with that is that the flip side of that coin is that the trial court also stated that the remaining partners in the partnership, the trial court could not tell, it was, as a quote-unquote, it was a lingering issue, whether or not those partners were still partners of the partnership or not. Well, logic dictates then, Your Honors, that if it could not be told one way or the other whether the partners who voted out Mr. Croucier were in or out of the partnership, then it has to be that it could be the fact that Mr. Croucier's expulsion was valid. If you can't tell whether they were in or out, and that's the basis of the determination whether or not the expulsion was valid, then it has to be that it's also a question, of which then should go to the jury, as to whether or not Mr. Croucier is in or out. You can't have one without the other. It's two sides to the same coin, and logic dictates that you have to look at it the same way. You're saying there doesn't need to be evidence in the record that DeMartini voted to expel Croucier? Because that's the missing link, right? Well, that's not, I don't believe, the issue that the trial court stated. I think the trial court stated, Your Honor, that the trial court could not tell whether or not Mr. DeMartini and Mr. Piercy were in or out of the partnership. Now, I do agree with you that the trial court did address the issue of whether or not Mr. DeMartini consented to the expulsion, because there was only two of them remaining, two out of the three remaining partners, whose names were on the letter that was sent to Mr. Croucier, expelling him. However, recall that you do have Mr. DeMartini right after participating in WBS. Warren, that's Mr. DeMartini, Bobby, Bobby Watts would be an S, even Piercy. The three remaining partners who expelled Mr. Croucier formed the new corporation, the plaintiff in this matter, WBS. So there is evidence that Mr. DeMartini understood that Mr. Croucier was expelled and did consent to it, because there is also evidence in the record that he signed off on the assignment to WBS. Well, you keep contending that Mr. Croucier was expelled, but wasn't that the underlying question? Because there was never any evidence that he executed the written agreement or written statement or written agreement concurring with his partners that Croucier should be expelled. That was the crux of the district court's issue, wasn't it? I would slightly disagree with your honor. Thank you for asking that question, but I would slightly disagree with that. The crux, I believe, that the trial court stated was that the trial court could not tell if Piercy and DeMartini were in or out when they made the decision to expel Croucier. And I believe that there is evidence in the record of consent by Mr. DeMartini. Was there written consent by DeMartini? His name was not on the letter that was sent to Croucier, but the partnership does not require the written consent. I'm going to let you get to that. Okay. But was there written consent by DeMartini? I would say yes, your honor. Evidence in the record of that? I would say yes. Now, his name was not on the letter that was sent to Mr. Croucier, if that's what your honor is asking. Yes. His name was not on the letter. I will give you that. However, your honor, the documents that transferred all the assets from the partnership to WBS, Mr. DeMartini signed off on all those documents saying that he was a partner and that he was now assigning all those assets. You're telling me, as a district court judge, is that there's a genuine issue of material fact because we don't have his signature on that transmittal letter expelling Croucier, do we? Your honor, I would thank you and I would agree with you that at the best, WBS owns it. At the very least, your honor, it's an issue that needs to go to the jury, as you stated. Yes, your honor. It's a disputed fact and I think that's the problem here. Wait a minute. I'm looking at the district court's order, page 10. It says, there is no dispute that Croucier remained a partner through the end of 1996. The letter only refers to DeMartini's withdrawal, this is page 9 now, only refers to DeMartini's withdrawal from the band RAT with no mention of the RAT partnership and does not strictly comply with the requirements of the partnership agreement. Isn't that right? Yes, your honor. And that was addressing whether or not, because Mr. Piercy and Mr. DeMartini both withdrew from the band. Now, they withdrew from the band, not the partnership. And that's the issue that I think the trial court was referring to in that part of the ruling that you were just reading, your honor, is that in order to withdraw from the partnership, they had to do specific things. There was very specific tasks that needed to be accomplished in order to withdraw from the partnership. And what the letters that both Mr. Piercy and Mr. DeMartini sent to the partnership were them just withdrawing from the band. Right, but that's why the district court relied on that. The fact that he only withdrew from the band and not the partnership means that he's still a partner, which means that he still needed to consent. And because he wasn't a party to the expulsion, the expulsion was not valid. Thank you, your honor. I would disagree with you though, that he did can actually consent to the expulsion by, because number one, the partner... He's not what the district court found out. Correct, your honor. Well, but here's the thing. I think the district court also did not really get to that point because the district court stated that it was a lingering question whether or not Mr. DeMartini and Mr. Piercy were in or out of the partnership. If that's the lingering question, it cannot then get to that secondary question of whether or not Mr. DeMartini consented to the expulsion or not. However, once again, your honors, I would point to these couple of facts. The partnership agreement does not require the expulsion to be in writing, the unanimous consent to be in writing. Number two, the documents that transferred all the assets and that basically closed the partnership and opened WBS Inc. was signed by all three gentlemen, Mr. Blotzer, Mr. Piercy, and Mr. DeMartini, acknowledging their position as partners, transferring assets then to the corporation. I think then, and I would also point out one other factor, your honor, that is in the record, is that at the 2002 state court ruling, which was Mr. Piercy bringing the exact same action against, on the exact same issues that Mr. Crusay brought in this action, against WBS, Mr. Blotzer, Mr. Piercy, among others, in the summary judgment motion that was granted by the state court on behalf of WBS, DeMartini, and Blotzer, in his declaration, Mr. DeMartini stated that Mr. Crusay had been expelled, as well as his separate statement of undisputed facts, actually, that Mr. Crusay had been expelled from the partnership. That was even recognized by Mr. Piercy, who was bringing that action back in 2000 to 2002. So you have an under oath statement by Mr. DeMartini in the 2002 court action that Mr. Crusay was expelled. You have him signing notarized documents, moving assets to the WBS Inc., acknowledging his position as partner, and then acknowledging, obviously, the fact that Mr. Crusay was expelled. There is no requirement by the partnership agreement that it had to be in writing. He was working in conjunction with his other two partners, Mr. Piercy and Mr. Blotzer. Their two names were on the letter, his wasn't. But that doesn't mean that he did not consent to the expulsion. And at the very least- The judge found that he did not consent. But this kind of hunts back to Judge Gould's underlying question. Based on all that you're saying, then, does the judgment below provide declaratory relief? And if so, tell us how. I believe it does, Your Honor, in that the ruling on the summary judgment provided the relief that Mr. Crusay was seeking of having the ownership of the marks declared to be the WRAP partnership's property. And I think that the ruling does do that. Ownership never changed. Well, it was void ab initio, correct. Right. That's the import of the ruling, is that all of these things that happened in order to change or transfer the ownership, all of that was not valid. And so, therefore, ownership remains with the WRAP. Correct, Your Honor. Because, as the trial court stated, the expulsion was not valid. But, once again, the trial court also stated that the basis for determining the validity of the expulsion, that not all partners consented. But the trial court did not say that. The trial court said it was a lingering question whether or not they were in or out. And if that is the case, if the lingering question is whether or not they were in or out, partners or not, then the lingering question must also be, on the other side of that coin, whether or not Mr. Crusier was expelled or not. They're the same. They're the two sides of the same coin, as I stated. I see that I've run into my rebuttal time, Your Honors. Judge Gould has a question. Judge Gould, let me just ask you a question on your last point. I don't mean to be a broken record, but going back to my first point, if there's this lingering question and that lingering question, then does the fact that there are lingering questions, does that mean that we really don't have a final order for practical purposes? Thank you, Your Honor. And you're not a broken record. I want to be clear on this. So, no, that is not the case because there was a ruling, a final ruling, to take to the appellate court. That's where the lingering questions come into play. The lingering questions are the reason that the trial court got to their final decision. But the final decision was handed down. The relief that was requested by Mr. Crusier was granted in a roundabout kind of way, but not specifically. And I would also state that the case law is clear that the trial courts don't have to address a declaratory relief cause of action, per se. They can choose to ignore it if they want. And I do want to save some rebuttal time, Your Honor, so I do thank you. All right. Thank you. Good morning. May it please the Court? I'm Stephen Doniger. I'm counsel for appellee and cross-appellant Juan Crusier. There is a co-appellee, Mark Israel, representing Rob Hoffman and one management who I'll be splitting time with. And at this point, I'd like to reserve six minutes for rebuttal. Did you decide how you were going to split up time? We did. And you were going to take how many minutes? I don't expect to use the totality of the non-rebuttal time, and I'm just going to then cede whatever's left to counsel. He doesn't, not to speak for him, but he doesn't need more than a minute or two, is what he had indicated to me. All right. Thank you. Let me start with the question that Judge Gould raises. In granting summary judgment against WBS and in favor of the defendants, Judge Pragerson-Hell stated, and this is from volume six of the excerpts of record at 1361 through 1376 is his order. He says, the evidence is undisputed that Crusier was a founding partner of the RAT partnership. No reasonable fact finder could conclude that Crusier was ever expelled from the partnership. It's undisputed that no partner in the RAT partnership could transfer or assign any part of his interest in the RAT partnership without the unanimous consent of the other partners. Crusier has never consented to the assignment of the RAT marks to WBS or anyone else. Accordingly, there's no tribal issue with respect to the validity of the assignment of the RAT marks to WBS. Because the assignment was invalid, WBS cannot make the threshold showing that it has an ownership interest in the marks and its trademark claims fail. Summary judgment is therefore warranted in favor of Crusier and against WBS. In making that ruling, the court specifically addressed Mr. Crusier's request for declaratory relief that WBS had no rights in the RAT trademarks, that he was a member of the partnership, and that those rights remained with the partnership. It was addressed. The issue that we have and what we've asked for in our cross-appeal is we've asked that that be specifically incorporated into the judgment. The judgment that was entered in this case simply says, forgive me for paraphrasing, but effectively for the reasons stated in the order on summary judgment, judgment is granted against WBS on all causes of action. So that finding at the summary judgment hearing is incorporated into the final judgment, but not specifically so. And that's created some issues with respect to third parties who want to see a final judgment that specifically incorporates what those findings are. But it's our view that the declaratory relief has been addressed in a final order of the court. It just There are two matters that have arisen since we did our briefing. This is our opening brief in this case that I'd like to discuss with this court because those two matters concern both WBS's appeal and our cross-appeal. The first one of those matters is something that just occurred about two weeks ago. In addition to suing Juan Crusier for trademark infringement, WBS also filed a second lawsuit that was also before Judge Pragerson against the lead singer of R.A.T., Stephen Piercy, entitled WBS Inc. v. Stephen Piercy. That case also went to Judge Pragerson, the same judge. And in a summary judgment ruling in that case, Judge Pragerson reached the same conclusion, that the transfer was invalid, WBS had no rights, that's it. I note that an appeal was filed in that case. And on January 24th, there was an order from this court, from the Ninth Circuit, saying that the counsel had failed to file an opening brief. Pursuant to Ninth Circuit Rule 42-1, the appeal is dismissed for failure to prosecute. Counsel for appellant directed to notify his client immediately of the dismissal. And the district court, within 21 days, shall act as the mandate of the court based on that order. And that's case number 18-55703. The significance of that, of course, is that even should, and for all the reasons set forth in our brief, particularly Rule 10, that we don't have a full record before the court of all the paperwork on the summary judgment hearing, but even aside from all that, if this matter were to go back to Judge Pragerson for further findings on summary judgment, Judge Pragerson would have to reach the same conclusion because there's now collateral estoppel in another case in which WBS has claimed trademark rights against another one of the members of the WRAP partnership that's now final. I don't know why we're here. There could be no other result. And I'm not going to recast or rehash all of the other points that are pointed out that under Rule 10, WBS was required to put forth a full record, a full evidentiary record of everything that was in front of the district court, the evidence, the objections, everything that this court could then rule on the propriety of it, it failed to do so. And there are countless, well, they're not countless, they can be counted, but there are quite a few docket entries, 127, 137, 139, 149, 141, 142, 143, 144, we note in our brief all the docket entries relative to the summary judgment motion that WBS simply didn't put in front of this court. So under Rule 10, that I believe requires summary affirmation of the district court's ruling on summary judgment. Can you address counsel's statement during his argument that there are these lingering questions in terms of who was in and out of the WRAP partnership at the time of the purported transfer? Because I thought that WBS had taken the position in the district court that Lee Martini was in fact still a member of the WRAP partnership. WBS definitively took that position, and the district court found that when Demartini left the band in 1992, that that didn't comply with the requirements to withdraw from the partnership, and therefore he hadn't withdrawn. You're correct. There's no issue there. There is no issue. And with respect to the other issue, Your Honor, that you had asked about as to whether or not Demartini ever consented, and what was the evidence? The court's finding in summary judgment is Demartini was a member of the partnership. Here's a letter allegedly from Piercy and Blotzer. Piercy disavowed any knowledge of it. But here's a letter from Piercy and Blotzer purporting to expel Crucier. Where was Demartini? Crickets. There was no answer. Mr. Sherman has now come forth and said, well, you know, there's all this stuff from the 2002 litigation and this declaration, and none of that was before the court at summary judgment. That's all evidence that doesn't really get where they wanted to get anyway, but it wasn't even presented to the court until after the summary judgment ruling. Motions for reconsideration and motions for new summary judgment, based on the evidence before the court, assuming this court is going to look into it in light of the failure to comply with Rule 10, the court still got it right. The second matter that I want to raise, and this goes to the attorney fee issue, is when we had brought our motion for attorney's fees, we raised the issue with the court that we had cited the correct standard to the court in our motion for attorney's fees. We cited the Ninth Circuit's 2016 SunEarth case, of course, based on the Supreme Court's octane fitness decision. I mean, all of that was in a supplemental excerpt of record at page 296, but the district court gave a one-line fees denied, and that in and of itself, I think, makes remand necessary because there was no statement of reasons. We don't know whether the right standard was applied, and I think that that's really important because the standard has changed in awarding fees on convention and commentator that I've been to and heard from and read, makes clear that really the standards for awarding fees in copyright, patent, and trademark cases have really kind of come into a bit more of a convergence, and the standard is the district courts analyzing a request for fees under the Lanham Act, and this is the language from SunEarth, should examine the totality of the circumstances to determine if the case was exceptional, and those factors include the frivolousness, motivation, the objective unreasonableness, both factual and legal, and the need in a particular circumstance to advance considerations of compensation and deterrence. Well, I take it that the district court had a full briefing on the issue of whether this case is exceptional or not and denied it, albeit without an explanation. You're saying that there's no indication in the record that the district court considered the appropriate factors, that we can't infer that by its denial the district court found this not to fall within the exceptional case category? That's correct, Your Honor, and I think that's, I think that conclusion is compelled by prior Ninth Circuit authority. You know, Mattel Inc. versus Walking Mountain Productions, quote, generally a district court's order on attorney's fees may be set aside if the court fails to state reasons for its decision or applies the incorrect legal standard. Smith versus CMTA, quote, if the district court fails to, and these are all cited in our brief, if the district court fails to state the reasons for its decision, a remand for a statement of reasons may be necessary. And there's additional cases we've cited. How can you evaluate whether the court applied the right standard or otherwise abused its discretion without having any idea of what the court's based on? And what I note, and I think this is particularly important in this case, is that in Sunearth, the court notes that one of the factors to consider is the need in a particular circumstance to advance considerations of compensation and deterrence. Counsel for the plaintiff has a demonstrated history of pushing forward trademark cases with no good faith factual basis and ignoring court laws. I mean, there have been multiple court findings on this in the central district, and we cited this to the district court. It's in the briefing. Judge Liu, Judge Otero, in fact, on August 16th of 2017, Mr. Sherman and his trademark plaintiff in a case called Ketab versus Misrani, Judge Liu awarded over $292,000 in attorney's fees, finding that Mr. Sherman and his firm, quote, knowingly pursued frivolous claims, including a claim for dilution for which there's no factual support. And when I mentioned before, there were two recent matters that bear on this. In May of 2018, after we submitted our opening brief, the Ninth Circuit upheld that award of fees. And that's... We need to stay focused on the facts and the record in this particular case. So what you're asking for is a remand for the district court to state its reasons or take another look at the arguments. We absolutely need to stay focused on the facts of this case, but I don't throw out other findings just to make someone look bad. What I do is when one of the factors is the need for compensation and deterrence, and there's a claim against counsel who in this case, the district court found repeatedly violated local court rules, filed countless, multiple baseless TRO requests. And I'll note the second one of those TRO requests, and this is all in the record, was right after we had filed a substitution of counsel, before it had been ruled on, counsel races to court to file a second TRO request with nothing more than he had on the first TRO request that was denied, where the court hasn't approved our substitution yet. We had multiple motions to strike other motions, multiple motions to shorten time, multiple motions for you to reconsider prior motions, making arguments based on evidence never produced in discovery, making arguments based on repealed law, refusing to produce witnesses for deposition, including Mr. Blotzer, the main architect of this claim, producing four PMQs who had no knowledge of anything. This is all well-documented. We had to file motions to compel. And if there's any question that this was baseless, frivolous, and unnecessarily increased the cost of litigation, consider that plaintiff lost every single one of those motions. And I only mention other cases because it legitimately seems to be a pattern in practice. And to the extent that the district court should have considered the need for deterrence, and you have a law firm who multiple district court judges in the central district have found unnecessarily multiply proceedings and fail to follow the rules, that's a factor that should have been considered. But you're down to five and a half minutes. Yes, let me let me cede a few moments to my co-defense counsel, and I do thank you for your Good morning. Good morning. Mark Israel for Rob Hoffman and One Model Management, LLC. May it please the court. I would simply like to emphasize the fact that Mr. Hoffman, as you know from the briefing, was the manager of the band for a short period of time. The claims against him were different from the claims that were at issue again between stake and who owns the trademark to Ratt or the intellectual property. Summary judgment was granted in favor of Mr. Hoffman, appropriately so. There is no briefing, no argument developed in the briefing at all that would permit reversal of that decision. It is clearly a final decision as to Mr. Hoffman. He has incurred attorney's fees in this case that he shouldn't have had to. Our argument is simply this, whatever happens with a remand or final decision should not implicate Mr. Hoffman. The case should be over as to him. There is no reason to change the ruling of the district court as to Mr. Hoffman. Unless the panel has questions, I will submit on that. No, that's fine. Thank you. Thank you, your honors. I would like to address a couple of things by my colleague. The various other cases which are not before this court that my colleague brought up, my name is not named in those cases. I would take umbrage with the fact that he is putting specifically those cases, the sanctions or whatever that comes down from those cases on me. Yes, the law firm I work for, but I'm not an owner of that law firm. I have no say. The only issue here is whether further explanations are needed. Thank you, your honor. Yes. As to the attorney's fees issue. Correct, your honor. I would note this. Obviously, we had a good faith position for bringing this case. The motions that were briefed, the decisions by the trial court, we believe were abuse of discretion, were prejudicial error in a number of places. My colleague did not address the merits of this case because they have no response to the merits of this case. They got fortunate in the rulings that came down from the trial court. The bottom line here is that WBS had a good faith belief in the ownership. They had the trademark for 20 years, unimpeded, registered trademarks in their name with the USPTO for 20 years using it. Mr. Crucier acknowledged under oath that he knew about the trademarks for 20 years and that WBS was exploiting them. Did not do anything about it. He acknowledged the fact that he knew about the 2002 litigation in state court. Did not do anything about it. Did not rise up and make his voice heard. And that's the reason why Mr. Crucier's first motion for leave to amend to add counterclaims was withdrawn by counsel because they tried to bring in facts that were, and causes of action that were admittedly baseless and beyond the statute of limitations. Now, we would also take issue with the fact of the rulings on the second motion for leave to amend. We don't believe that it should have been granted, nor do we believe that even after it was granted, that we believe that our motion to dismiss should have been granted as the claims that were brought by Mr. Crucier, by the facts alleged, he did not have standing, nor did he allege claims that could have been acted upon. The district court in its rulings, and I will say this, the motions to compel that my colleague referred to, were not granted. It was not every motion that was granted. We did win a couple. And I would say this, your honors, is that if you look at the record, and you look at the rulings, and you look at the evidence, and those docket entries mentioned by my colleague that were not in, were inconsequential to the issues before this court, we would definitely put everything before this court that was germane. But the problem, but the problem, you're over time, so unless my colleagues have any questions, I think that wraps up the argument. Judge Gould? None here, no. Thank you, your honors. Thank you, your honors. Certainly the matter needs to be sent back, remanded to Judge Pragerson for a statement of decision and to ensure that the correct standard is applied. In doing so, I would ask this court to do more. I know that you've got a number of important cases on your plate, and I'm sure you've got a lot of work to do, but I would ask that this court actually take a look at the the proceedings in this case, the evidence, the positions taken, the lack of factual support for positions taken, and actually give some direction to the court, to Judge Pragerson, as to my hope would be that we would get a memorandum that says this is a case that seems to be one in which fees are appropriate. There's a reason that fees are allowable in trademark cases. There's a reason that there's fee shifting. In many cases, you're going to have bona fide disputes over likelihood of confusion between two good faith users. In other cases, you've got counterfeiting, or you've got a scheme by an owner to bully rights away from co-owners, and those are exceptional cases, and those are cases that should be pursued. And in this case, it was a case that was defended under threat of financial ruin. You know, we had... I think those arguments, Counselor, need to be directed to the district court. We don't make factual findings, as you know. I understand, but what the court does do would be to say whether or not, even under an abusive discretion standard, you would need to consider the totality of the facts and determine whether or not there would be an abusive discretion. We don't have a statement from the district court upon which to do that, but the court could still take a look at that factual basis. Ideally, we get... So again, my request would be that if the court looks at the totality, looks at the record in this case, and it seems like a case where this could absolutely support an award of attorney's fees, I would request some direction to the district court in that regard. Because quite frankly, the cases, the appellate cases, there's a dearth of Ninth Circuit appellate cases applying the standard, applying the Sun Earth standard. I mean, the Sun Earth standard was in 2016, taking the octane fitness decision and saying, yes, that's the correct standard for trademark cases as well. And all of the other Ninth Circuit authority that actually says when a case should be deemed exceptional and when fees are appropriate really predates that decision. So there is an opportunity here to shed some light on not only making sure that the court considers the correct standard, but how that standard should be applied under the facts of this case. And I think this is a great case to do that in because there's such a rich abundance of facts that could support an award of fees. All right. Thank you very much, both sides for your argument today. The matter is submitted for a decision by this court. We'll recess until tomorrow.
judges: Gould, Nguyen, Marbley